IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JACK R. TURNER,

      Plaintiff,

v.                                        CASE NO. 2:08-cv-00850

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.


**M E M O R A N D U M   O P I N I O N**

    This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  Both parties have consented in writing to a decision by the United States Magistrate Judge.

    Plaintiff, Jack Turner (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on October 18, 2005, alleging disability as of August 25, 2005, due to bipolar disorder, poor comprehension/understanding and back, hip and shoulder pain.  (Tr. at 141-45, 182, 593-95.)  The claims were denied initially and upon reconsideration.  (Tr. at 16.)  On July 12, 2006, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 71.)  The hearing was held on May 8, 2007, before the Honorable Theodore Burock.  (Tr. at 605-40.)  On May 21,

2007, the ALJ determined that Claimant was not entitled to benefits.[1]  (Tr. at 56-67.)  On August 23, 2007, the Appeals Council granted Claimant's request for review based on new and material evidence and remanded Claimant's case to the ALJ.  (Tr. at 69-70.)  On December 19, 2007, the ALJ conducted a second administrative hearing, which was continued on January 10, 2008.  (Tr. at 640-44, 644-92.)  By decision dated February 22, 2008, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 16-38.)  The ALJ's decision became the final decision of the Commissioner on June 11, 2008, when the Appeals Council denied Claimant's request for review.  (Tr. at 7-9.)  On June 18, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

---

[1]  Claimant had been granted benefits on earlier applications, and it was subsequently determined that he returned to substantial gainful employment in May of 2004.  Claimant filed the current applications on October 18, 2005, as noted above, and alleged disability beginning August 25, 2005.  (Tr. at 56.)

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2008).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f),

3

416.920(f) (2008).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 19.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of major depressive disorder, recurrent to moderately severe, mixed affective state with secondary panic attacks and a combination of orthopedic impairments involving the cervical spine, lumbar spine, both knees and both feet. (Tr. at 19.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 24.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 26.) As a result, Claimant cannot return to his past relevant work. (Tr. at 35.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as bottle packer, laundry folder, and non-postal mail sorter, which exist in significant numbers in the national economy. (Tr. at 37.)  On this basis, benefits were denied.  (Tr. at 38.)

4

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was fifty-one years old at the time of the first administrative hearing. (Tr. at 608.) Claimant completed the eighth grade. (Tr. at 610, 649.) In the past, he worked as a coal

5

miner and as a security guard in a shopping mall.  (Tr. at 635.)

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the medical evidence of record developed after Claimant's alleged onset on August 25, 2005, and will summarize it briefly below.

On August 26, 2005, Claimant reported to Raleigh General Hospital after injuring his groin at work.  (Tr. at 325-26.) Pelvic x-rays were negative.  (Tr. at 328.)

On November 16, 2005, Serafino S. Maducdoc, Jr., M.D. examined Claimant at the request of the State disability determination service.  Claimant complained of pain in the neck, arms, lower back and hips.  Dr. Maducdoc diagnosed chronic cervical strain, chronic lumbosacral strain and bipolar disorder.  (Tr. at 386.)  Dr. Maducdoc's diagnosis of bipolar disorder was based on Claimant's report that he had been seeing Dr. Hasan for a few years for bipolar disorder.  (Tr. at 385.)

X-rays of Claimant's lumbar spine on November 15, 2005, showed no evidence of acute osseous abnormality, but mild degenerative changes most prominent at L5/S1.  (Tr. at 391.)

On November 16, 2005, Sunny S. Bell, M.A. examined Claimant at the request of the State disability determination service. Claimant reported a lifelong history of mental problems, including bipolar disorder.  Claimant reported that he tried to work in September of 2005, and worked for two weeks before he had to quit

6

because of pain.  (Tr. at 393.)  Claimant reported he was depressed
and had panic attacks.  Claimant had been in treatment with Dr.
Hasan for approximately seven years and had been prescribed
psychotropic medication, which helped.  (Tr. at 393.)  Claimant's
mood was depressed, and his affect was restricted.  Judgment was
within normal limits.  Immediate memory skills were within normal
limits, recent memory skills were severely deficient and remote
memory skills were within normal limits.  Concentration was within
normal limits.  Ms. Bell diagnosed bipolar disorder, not otherwise
specified and panic disorder without agoraphobia on Axis I and
deferred an Axis II diagnosis.  (Tr. at 395.)  Claimant interacted
in a mildly deficient manner socially, but his pace and persistence
were within normal limits.   Ms. Bell opined that Claimant's
prognosis was poor.  (Tr. at 396.)

On November 29, 2005, a State agency medical source completed
a Physical Residual Functional Capacity Assessment and opined that
Claimant could perform medium work, with no other limitations.
(Tr. at 398-405.)

On December 26, 2005, a State agency medical source completed
a Psychiatric Review Technique form and opined that Claimant's
mental impairments were not severe.  (Tr. at 406-19.)

The record includes treatment notes from New River Health
Association dated May 27, 2004, through January 10, 2006.  An MRI
of Claimant's lumbar spine on May 27, 2004, showed slightly narrow

L5-S1 disc space posteriorly with partial disc space dehydration, but no fracture, disc herniation or central canal stenosis. (Tr. at 489.) X-rays of the lumbar spine showed minor degenerative lipping of L4 and L5. (Tr. at 488.) The treatment notes prior to Claimant's alleged onset indicate ongoing and chronic mental health problems and two workplace injuries, one resulting in an acute lumbosacral strain and lumbar contusion and the other resulting in epicondylitis, worse on the left, cervical strain and pain in the right shoulder. (Tr. at 433-87.)

On August 29, 2005, Claimant reported to his physician at New River Health Association, D. Doyle, M.D., that he was injured again on August 25, 2005, when he fell from a piece of equipment and injured his thigh. Dr. Doyle diagnosed perineal contusion and right thigh contusion. He recommended that Claimant rest and engage in only light activity. Dr. Doyle wrote that Claimant should not work until September 7, 2005. (Tr. at 432.)

On September 1, 2005, D. Mooney, C-FNP of New River Health Association saw Claimant related to his complaints of major depression. Ms. Mooney diagnosed major depression and continued Claimant on Viagra, Klonopin and Duloxetine. (Tr. at 430.) On September 19, 2005, Dr. Doyle noted that he had seen Claimant at the time Ms. Mooney examined him and Claimant had asked for a return to work slip, which he gave Claimant. Claimant worked from September 1, 2005, through September 16, 2005, but then reported to

Dr. Doyle that his right hip and pubic bone were very painful, that he could not walk or bend over and that he had some back pain. Claimant had tenderness over the adductor origin and had limited adduction. Claimant had difficulty walking and was stooped over. Dr. Doyle ordered a hip x-ray, and noted that Claimant had not had one when he originally was injured. (Tr. at 428.) On September 26, 2005, Claimant reported continued aching in the right hip and groin area and in the lumbar area. Claimant had limited range of motion in the right hip and difficulty walking sideways or bent over. Dr. Doyle's diagnoses included contusion of perineum and groin, contusion of the right thigh and sprain of the right hip. He stated that Claimant should be off work until mid-November. (Tr. at 427.)

On October 10, 2005, Claimant saw Dr. Doyle and reported feeling better with physical therapy, though he continued to have pain in the right perineal and hip area. Claimant also complained of right shoulder and low back pain. Dr. Doyle found that Claimant was tender at the ischial tuberosity and also over the right greater trochanter of the hip. Lumbar flexion was to about 60 to 70 degrees. Claimant had limited side bending to the right and left and an abnormal gait. (Tr. at 426.) Dr. Doyle recommended two additional weeks of physical therapy. (Tr. at 426.) On October 20, 2005, Claimant reported continued difficulties. Claimant's right leg and right thigh were better, but he reported

poor balance on the right and pain when he moved his hip.  Dr.
Doyle planned to refer Claimant for an orthopedic evaluation.  Dr.
Doyle felt that Claimant had reached maximum medical improvement on
the injury, though he had several other outstanding musculoskeletal
problems including low back and shoulder pain.  Dr. Doyle planned
to release Claimant to work on October 24, 2005.  (Tr. at 425.)

On October 27, 2005, M.K. Hasan, M.D., who had treated
Claimant prior to his alleged onset, diagnosed major affective
disorder, possibly bipolar in nature with cyclothymia, sexual
dysfunction, mixed in nature and previous given diagnoses, which
included major depression.  Claimant reported that he was doing
fair and had since retired.  Claimant continued to have mood swings
and felt that he had bipolar disorder.  (Tr. at 423.)  On December
8, 2005, Dr. Hasan diagnosed major depression, mixed affective
state with secondary panic attacks, sexual dysfunction, mixed in
nature and previous given diagnoses. Dr. Hasan noted that Claimant
continued to "do fair."  Claimant was alert and oriented.  Dr.
Hasan adjusted Claimant's medication.  (Tr. at 422.)

On January 10, 2006, Claimant complained to Dr. Doyle of neck
pain radiating into his arms.  Claimant had limited range of motion
in the neck.  Claimant had good movement of both shoulders and good
grip in the arms.  Dr. Doyle planned to obtain cervical spine
films.  He prescribed Naproxen.  (Tr. at 420.)

On February 1, 2006, Philip J. Branson, M.D. conducted a

10

consultative orthopedic examination at the request of Dr. Doyle.
Claimant complained of right hip and groin pain after the injury in
July of 2005.  Claimant walked without a limp.  He showed some
stiffness and restriction in motion in the lower back.  The
neurologic exam was normal.  In the right hip, Claimant had no
significant pain with hip rotation.  Claimant still had tenderness
over the adductor muscles and the ischium.  Straight leg raising
was negative.  X-rays of the hip showed a subtle fracture through
the inferior pubic ramus.  The radiologist's report notes some
arthritis and narrowing of the joint space of the hip.  X-rays of
the cervical spine showed significant hypertrophy of the joints of
Luschka with foraminal narrowing at several cervical levels.
Claimant had degenerative disc disease with anterior osteophyte
formation at the C5-6 level and flattening of the lordosis of the
cervical spine.  (Tr. at 570.)  Dr. Branson's assessment was
probable pubic ramus fracture on the right side due to direct
trauma, significant cervical spondylosis with increasing symptoms
of cervical radiculopathy, low back pain and history of bipolar
disorder, currently under good control.  (Tr. at 570.)

     Dr. Branson recommended a short course of physical therapy to
regain motion in the hip and repeat x-rays of the hip to confirm
healing process.  Regarding Claimant's increasing symptoms of
radiculopathy in the cervical spine, Dr. Branson suggested that Dr.
Doyle consider referral for further evaluation of the neck and back

pain.  (Tr. at 571.)

On May 25, 2006, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium level work, reduced by an occasional ability to balance, stoop and crawl, mild limitation in the ability to reach in all directions and a need to avoid concentrated exposure to vibration and hazards.  (Tr. at 491-98.)

On May 27, 2006, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe.  (Tr. at 499-512.)

The record includes mental health counseling notes from Scott Thompson, M.A. of New River Health Association dated October 13, 2006, through May 2, 2007.  (Tr. at 525-41.)  Mr. Thompson completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) on May 1, 2007, and opined that Claimant's abilities were poor in almost every area.  (Tr. at 542-43.)  Mr. Thompson wrote that Claimant "has one of the most severe cases of anxiety ([and] also depression) I've ever seen.  He simply cannot function in any meaningful way around people.  He is so anxious he cannot concentrate or think straight."  (Tr. at 543.)

On May 3, 2007, Dr. Doyle completed a Medical Assessment of Ability to do Work-Related Activities (Physical) and opined that Claimant could lift no weight, could stand two hours in an eight-hour workday, less than one hour without interruption, that

Claimant can sit for two hours in an eight-hour workday, less than one hour without interruption, that Claimant can never climb, and can occasionally balance, stoop, crouch, kneel and crawl, that Claimant has limitations in pushing/pulling, hearing, around heights, moving machinery, noise and vibration.  Dr. Doyle opined that Claimant was totally and permanently disabled due to his physical medical impairments, including degenerative disc disease of the cervical and lumbar spine.  Dr. Doyle also noted that in addition to his physical problems, Claimant has a "whole set of psychological factors."  (Tr. at 544-47.)

The record includes additional treatment notes from New River Health Association dated January 10, 2006, through May 6, 2007.  (Tr. at 549-62.)  On January 10, 2006, Claimant reported to Dr. Doyle that he had pain radiating into his arms.  Claimant had limited range of motion in the neck, but good movement of both shoulders and good grip in the arms.  Dr. Doyle diagnosed cervical strain and probable cervical degenerative joint disease.  He prescribed Naproxen and ordered x-rays.  (Tr. at 550.)  X-rays of Claimant's cervical spine on January 10, 2006, showed degenerative changes.  (Tr. at 551.)  On February 27, 2006, Claimant reported to Dr. Doyle that he had neck and back pain.  Claimant also reported continuing problems with anxiety, depression and irritability.  Dr. Doyle's impression was persistent cervical and lumbar spine pain and depression and anxiety.  (Tr. at 562.)

On March 9, 2006, Dr. Hasan diagnosed major depression, recurrent to moderately severe with secondary panic attacks and sexual dysfunction, mixed in nature, much improved with medications.  Dr. Hasan observed that Claimant "continued to do fair."  (Tr. at 564.)  Claimant reported depression and anxiety related to his wife's health situation.  Claimant reported that "it's just not the same, but I'm much better."  (Tr. at 564.)  Claimant was alert and oriented.  (Tr. at  564.)

On April 11, 2006, Claimant reported to Dr. Doyle that his neck continues to be stiff and painful and that he has pain radiating into both arms.  Dr. Doyle observed that Claimant was a "[v]ery uncomfortable stooped, middle-aged man."  (Tr. at 552.)  He found that Claimant had limited range of motion and crepitus with extension and rotation.  Claimant had slight limitation in bicep strength in his right arm.  Claimant's range of motion in the neck was also limited.  He diagnosed cervical degenerative disc disease with "a lot" of continuing pain.  (Tr. at 552.)  Claimant did not request opiates.  Dr. Doyle prescribed a soft cervical collar to be used during the daytime and prescribed Naproxen.  He also directed Claimant to undergo an MRI.  (Tr. at 552.)

On April 17, 2006, an MRI of Claimant's cervical spine revealed posterior spondylosis and overlying disc protrusion at C4-5, which extends into the right neural foramen and causes mild narrowing, and mixed spondylotic disc protrusion at C4-5, mild

14

effacement of the ventral thecal sac.  (Tr. at 559.)  A handwritten note on the MRI results states that the "MRI shows some arthritic changes and bulging disc at one level.  Do not think this will need or benefit from surgery."  (Tr. at 559.)

On May 4, 2006, Claimant reported to Dr. Doyle with a sinus infection.  (Tr. at 554.) On July 13, 2006, Dr. Doyle noted that Claimant fell down some steps.  Claimant reported he was doing well on current psychotropic medication.  Claimant's affect was broad, and his mood was appropriate and not depressed.  Claimant had moderate tenderness over the left lumbar spine with limited lumbar range of motion.  Claimant had a large bruise on his left inner thigh, small bruise on his right inner thigh, and a crusted area over his right achilles tendon.  Claimant also had tenderness over the left paralumbar muscles as noted.  Dr. Doyle adjusted Claimant's medication.  (Tr. at 556.)

On July 27, 2006, Claimant reported to Dr. Doyle that he fell at home earlier in the month.  He reported to the emergency room. Claimant still had bruising on his leg from the fall.  Claimant reported that he was able to ride his lawnmower and tractor, but that he "pay[s] for it the next day."  (Tr. at 560.)  On November 14, 2006, Dr. Doyle diagnosed a ventral hernia and chronic psychological diagnoses under care.  (Tr. at 561.) Dr. Doyle noted that the hernia developed after Claimant attempted to complete a physical test in conjunction with a job application.  Claimant

15

reported that "for psychosocial reasons he decided not to take that job and is very emotionally upset about that decision."  (Tr. at 561.)

On November 30, 2006, Claimant continued to do well despite various psychosocial pressures.  Claimant reported he was more depressed lately, but denied suicidal ideations.  (Tr. at 563.)

On April 6, 2007, Mariani Didyk, PAC of New River Health Association diagnosed herpes zoster.  (Tr. at 549.)

Dr. Hasan completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) on May 3, 2007, and opined that Claimant's abilities were fair or poor in almost all categories. (Tr. at 567-68.)

On July 31, 2007, Dr. Doyle saw Claimant for a possible upper respiratory infection or chemical rhinitis and sinusitis and recent thoracic pain.  Claimant had recently helped his brother load planks of wood covered in insulation and then experienced thoracic pain and pain in the shoulders, neck and arms.  Claimant had tenderness to touch in the parathoracic muscles at L4 to L8 level. (Tr. at 584.)

On August 12, 2007, Dr. Doyle completed a Department of Health and Human Resources form on which he opined that Claimant's diagnoses included cervical osteoarthritis, degenerative joint disease, pain and swelling in the right knee, lumbago and thoracic pain, depression and anxiety.  He opined that Claimant's prognosis

16

was poor for return to gainful employment.  Dr. Doyle opined that Claimant was totally and permanently disabled from his physical impairments.  In addition, he opined that Claimant had disabling mental impairments.  (Tr. at 572.)

On August 14, 2007, Dr. Hasan completed a Department of Health and Human Resources form on which he noted Claimant's diagnoses of major depression, recurrent, moderate to moderately severe in nature.  He opined that Claimant's prognosis was fair.  Dr. Hasan stated that Claimant had been unable to receive adequate treatment because of financial limitations.  (Tr. at 573.)

On October 4, 2007, Claimant complained of right knee pain. Claimant had been off work for more than a year.  Claimant's right knee was slightly fuller than the left.  There was subpatellar effusion.  There was no erythema or warmth in the right knee.  Dr. Doyle's impression was pain and effusion in the right knee, probably internal derangement and pain in both feet, probably early degenerative joint disease.  (Tr. at 582.)  X-rays of the feet were normal.  (Tr. at 583.)

An MRI of Claimant's right knee on November 6, 2007, showed a medial meniscal tear at the posterior horn body junction and undersurface of the posterior horn, stress reaction involving the anteromedial extreme aspect of the medial tibial plateau and low-grade chondromalacia of the trochlea with mild thickening of the ligamentum mucosum.  (Tr. at 575.)

17

On November 15, 2007, Dr. Doyle examined Claimant for follow up on his knee pain and for recurrent pain in the mid thoracic area between the shoulder blade and his heart.  Claimant had good alignment of the cervical, thoracic and lumbar spine, but very limited range of motion and a lot of guarding.  Claimant had mild diffuse tenderness in the thoracic spine, but no marked localized tenderness.  Dr. Doyle planned to do an EKG, x-ray of the thoracic spine and an MRI of the knee.  (Tr. at 580.)

X-rays of the dorsal spine on November 15, 2007, showed very minimal degenerative changes in the lower dorsal spine, but were otherwise normal.  (Tr. at 581.)

On December 12, 2007, Mr. Thompson completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on which he opined that Claimant's abilities were poor to none in all areas.  Mr. Thompson again wrote that Claimant was "one of the most overwhelmingly anxious people I've ever worked with in the 8+ years as a psychotherapist."  (Tr. at 579.)

On December 27, 2007, Brett Whitfield, M.D. conducted an orthopedic consultative examination related to Claimant's right knee pain.  Dr. Whitfield diagnosed right knee medial meniscal tear, patellofemoral syndrome and mild OA medial compartment, right knee.  Dr. Whitfield recommended an injection.  (Tr. at 591.)

On December 27, 2007, Dr. Doyle examined Claimant related to continuing complaints of pain in the neck, back and both knees and

18

worsening depression with a desire to "hurt people." (Tr. at 592.)
Dr. Doyle noted that Claimant's visit was scheduled in relation to
his seeking social security benefits and that he needed an updated
physical examination.  Claimant was going through a divorce and his
son was leaving for military service overseas.  Dr. Doyle diagnosed
cervical   degenerative   joint   disease,   lumbago   with   lumbar
degenerative joint disease, internal derangement of the right knee,
more   symptomatic   recently   and   depression   with   description   of
fluctuating moods and anger and nonspecific desire to hurt someone.
Dr. Doyle wrote that "[a]s I have stated multiple times before, I
believe he is totally & permanently disabled due to his cervical
lumbar, [right] hip and [right] knee pain & limitation.   Also
arranged for him to be seen by Mental Health Provider today with
possible hospital admission." (Tr. at 592.)

      Claimant testified at the administrative hearing that he saw
a mental health provider, but was not hospitalized because he
"cannot stand to be closed in a room.  It makes me go crazy." (Tr.
at 675.)

      At the last administrative hearing, the ALJ called two medical
experts to testify.  David Blair, Ph.D. testified that Claimant
suffers from severe major depressive disorder.  Dr. Blair testified
that  Mr. Thompson's  observations  of  extreme  anxiety  were  not
supported in the record at that level, though anxiety is noted from
time to time throughout the record.  (Tr. at 668-69.)  Dr. Blair

testified that Claimant did not meet or equal a mental listing "by themselves.  They may, combined with physical problems, to the exten[t] those are in existence." (Tr. at 671.)  Dr. Blair opined that Claimant should be limited to simple, repetitive tasks and limited contact with people.  (Tr. at 675.)

Judith Brendemuehl, M.D. testified that Claimant has a combination of orthopedic problems in the record that do not meet or equal a listed impairment.  (Tr. at 677, 680.)  Dr. Brendemuehl testified that Claimant could perform light exertional work with an occasional ability to climb ramps and stairs, an inability to climb ladders, ropes and scaffolds, balancing, kneeling, crouching and crawling, an occasional ability to stoop, occasional ability to reach overhead bilaterally in all directions, and a need to avoid concentrated exposure to extremes of temperature, humidity, vibration and all hazards.  (Tr. at 681.)  When asked if she felt that Claimant's impairments would equal a listing, she testified that "when I'm looking at this thing independently, physically, I don't think he has an orthopedic listing.  But if I have to add to it the limitations that are psychological, I think it would functionally equal it." (Tr. at 683.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred when he failed to give great weight to the opinion of the medical expert

witness, Dr. Brendemuehl, whose opinion was based on evidence from Claimant's treating physicians.  Claimant asserts that he has an impairment or combination of impairments that meets or equals Listing 1.04.  (Pl.'s Br. at 11-14.)

The Commissioner argues that substantial evidence supports the Commissioner's decision that Claimant was not disabled before February 22, 2008.  The Commissioner further asserts that the ALJ provided a meaningful explanation as to the weight he gave Dr. Brendemuehl's testimony.  (Def.'s Br. at 11-17.)

The court finds that the ALJ's decision is not supported by substantial evidence because the ALJ did not provide sufficient reasons for affording no weight to Dr. Brendemuehl's opinion, and he ignored the testimony of Dr. Blair that Claimant's combined physical and mental impairments may meet or equal a listing.  The ALJ did not accept Dr. Brendemuehl's opinions

> because her testimony is comprised by inconsistency.  Dr. Brendemuehl initially testified that the severity of the claimant's physical impairments did not meet or equal any listing.  When asked to consider the additional impact of psychological limitations, Dr. Brendemuehl said that the claimant's impairments equaled a listing, which she did not specify.  But Dr. Brendemuehl proceeded to described the claimant's physical symptoms again rather than showing how psychological symptoms impact his functioning.

(Tr. at 28.)  Portions of the hearing transcript that refer to the testimony mentioned by the ALJ are inaudible (Tr. at 682), making it difficult for the court to verify the ALJ's finding. Nevertheless, Dr. Brendemuehl does clearly testify at another point

21

in the administrative hearing that with the added psychological limitations, Claimant would functionally equal a listing.  (Tr. at 683.)  From the court's review of Dr. Brendemuehl's testimony, the conflict referred to by the ALJ is not apparent.  To the contrary, Dr. Brendemuehl's testimony clearly indicates she did not believe that Claimant met or equaled a listing when considering only his physical impairments, but when the mental impairments were added, Claimant equaled a listing.  That Dr. Brendemuehl does not refer to the listing that she believed Claimant equaled should not be fatal to her testimony.

Moreover, the ALJ does not mention in his decision, Dr. Blair's testimony that Claimant may be disabled when his physical and mental impairments are combined.  This testimony is consistent with Dr. Brendemuehl's testimony that Claimant does not meet or equal a listing based solely on his physical impairments, but "if I have to add to it the limitations that are psychological, I think it would functionally equal it."  (Tr. at 683.)  The ALJ purported to adopt the opinion of Dr. Blair (Tr. at 34), while ignoring a very important aspect of his testimony.  In light of the opinions from Claimant's treating, examining and other sources, including Dr. Doyle, Mr. Thompson and Ms. Bell, that Claimant is limited and/or totally disabled, coupled with the testimony of Drs. Blair and Brendemuehl, the court cannot conclude that the ALJ's decision is supported by substantial evidence.  In short, the ALJ's decision

22

does not reflect that every medical opinion was considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2008).

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is not supported by substantial evidence.  Accordingly, by Judgment Order entered this day, this matter is REVERSED and REMANDED for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: September 8, 2009

_Mary E. Stanley_
Mary E. Stanley
United States Magistrate Judge

23